UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION
CASE NO. 13-10004-CIV-MARTINEZ

PAUL LOPEZ, ANDREA TRDINA, and others similarly-situated,

**CLASS ACTION**

      Plaintiffs,

vs.

HAYES ROBERTSON GROUP, INC., a Florida corporation, d/b/a Mangoes Restaurant, d/b/a Fogarty's, d/b/a Fogarty's Restaurant Bar and Bakery, d/b/a Caroline's Cafe, REDFISH, BLUEFISH, INC., a Florida corporation, d/b/a Redfish, Bluefish, 37 COURT INVESTMENTS, INC., a Florida corporation, d/b/a Jack Flats, CAREN WINNIFRED DEMENT, individually, and JOSEPH H. WALSH, individually,

      Defendants.
_____/

**PLAINTIFFS' MOTION FOR DECLARATION OF A CLASS ACTION AS TO MINIMUM WAGE CLAIMS PURSUANT TO RULE 23(B)(3) and 29 U.S.C. 216(B)**

      COME NOW, Plaintiffs, PAUL LOPEZ and ANDREA TRDINA, by and through their undersigned attorney, and hereby move this Court for a determination that minimum wage claims may be maintained as a class action under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(B), and state in support as follows:

      1.    This is an action to enforce minimum wage violations pursuant to Florida Minimum Wage Law, F.S. § 448.110, and the Florida Constitution Art. 10, Sec. 24.

      2.    The three corporate Defendants are five restaurants located in Key West, Florida: 1) Hayes Robertson Group, Inc., d/b/a Mangoes Restaurant; 2) d/b/a Fogarty's; 3) d/b/a Caroline's Cafe; 4) Redfish, Bluefish, Inc.; and 5) 37 Court Investments, Inc., d/b/a Jack Flats.

All five locations are commonly owned by the individual Defendants, Caren W. Dement and Joseph H. Walsh. The putative class were employees who worked at one or more restaurant locations.

3. In a prior action, *Bennett, et al. vs. Hayes Robertson Group, Inc., et al.,* filed in the United States District Court, Southern District of Florida, Key West Division, Case No. 11-10105-CIV-KING, nineteen similarly-situated Plaintiffs filed a minimum wage claim against Defendants. In a second prior action, *Bienaime, et al. v. Hayes Robertson Group, Inc.*, *et al.,* filed in the United States District Court, Southern District of Florida, Key West Division, Case No. 12-10094-CIV-KING, six additional similarly-situated Plaintiffs filed the same minimum wage claims against Defendants. In this action, there are two additional named Plaintiffs, for a total of 27 minimum wage Plaintiffs.[1] The two previous actions are currently pending in Judge King's division.

4. A review of records produced by Defendants in the action of *Bennett, et al. vs. Hayes Robertson Group, Inc., et al.,* indicates there are over one-hundred twenty employees in the class.[2] Many of the class are geographically dispersed making joinder impracticable.

5. The claims of the Plaintiffs are typical of those of the alleged class (i.e., seeking unpaid minimum wages and liquidated damages during the five years preceding the filing of the Complaint).

6. The current and former employees are easily ascertainable and identifiable by a review of Defendants' records. Absent notice of the existence of said lawsuit, current and

---

[1] A Motion to certify the class of minimum wage Plaintiffs was denied by Judge King in the *Bennett* action. Additional actions, including this one, were filed as leave to amend in order to add additional Plaintiffs; it was denied. In this action, Plaintiffs cure the deficiencies outlined by Judge King when the Motion to Certify a Rule 23 Class of minimum wage Plaintiffs was granted (FLSA overtime collective action was certified in *Bennett*).

[2] A confidentiality Order was denied regarding the use of these documents. "Exhibit 1."

2

former employees will fail to learn of their rights to partake in this lawsuit in which they can possibly recover unpaid minimum wages, as many of the members of the potential class no longer reside in Key West, Florida.

7. The common questions of law and fact presented in this case predominate over any individual questions. The Plaintiffs and the other class members all seek to remedy common legal claims, Defendants' failure to properly pay them their minimum wages. A class action is superior to other methods of adjudicating this controversy.

## MEMORANDUM OF LAW
### Declaration of Class Action as to Minimum Wage Claims
### Pursuant to Federal Rule of Civil Procedure 23(b)(3)

### Legal Standard

Questions regarding class certification are left to the sound discretion of the court. C*ooper v. S. Co.*, 390 F.3d 695, 711 (11th Cir. 2004). Rule 23(a) provides that class certification is appropriate when the following is established:

> 1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The class must also satisfy one or more of the requirements of Rule 23 (b). *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D. Fla. 2009). Plaintiffs can satisfy such requirements. Multiple actions may create the possibility of inconsistent or varying adjudications. Moreover, the questions of law and fact common to all class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(1)(A). *Kelecseny, Id.*

In examining whether Plaintiffs have satisfied the requirements of Rule 23, the court should not consider the merit of the claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-8 (1974).

### The Proposed Class

Establishing an early class definition serves two purposes: (1) it enables the court to determine whether the case is suitable for certification; and (2) it insure that those actually harmed by Defendants wrongful conduct will be recipients of the relief provided. The definition is not problematic. The definition requirement does not require a strict degree of certainty and is to be liberally applied. *Singer v. AT & T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998).

The class sought to be certified is:

> All hourly paid tipped servers and bartenders employed by Defendants from January 2008 through May 11, 2011, who were paid at the reduced subminimum tip credit hourly-rate and who (1) participated in a tip pool; (2) Defendants deducted $3.00 per shift from their wage and for whom; and (3) Defendants deducted the cost of uniforms from the wage owed to them.[3]

### Argument

While the Plaintiffs bear the burden of showing that the requirements of Rule 23 have been met, "[f]or the purposes of class certification...the Court accepts the plaintiffs' substantive allegations as true." *In Re Carbon Dioxide Antitrust Litigation*, 149 F.R.D. 229, 232 (M.D. Fla. 1993. In deciding whether certification is appropriate, "[t]he Court resolves any doubt in favor of class certification." *Id.*, at 232. Additionally, "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on

---

[3] Similar language was approved in *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 316 (N.D. Ill. 2010); *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011).

the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732 (1974).

## The Requirements of Rule 23(a) are met

### 1. The Numerosity of Class Makes Joinder Impracticable

Rule 23(a)(1) requires "a class [be] so numerous that joinder of all members is impracticable." The numerosity requirement does not require that joinder be impossible, but rather that joinder be <u>difficult</u> or <u>inconvenient</u>. *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Plaintiffs need to proffer a reasonable estimate of the size of the class. *Leszczynski*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). However, Plaintiffs do not need to provide the precise number of the class. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). A general rule applied as to the numerosity rule is that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

In *Bennett*, the Court found that the numerosity element was met. A review of this docket and the docket in *Bennett, et al. vs. Hayes Robertson Group, Inc., et al.* supports a finding that other employees desire to opt-in to this litigation. Moreover, Plaintiffs' affidavits indicate there are others similarly-situated and estimate the class to number at least fifty individuals. "Exhibit 2 - Aff. Montgomery ¶¶ 6, 7, 9; Aff. Gomes ¶¶ 8, 9, 10; Aff. Logue ¶¶ 8, 9 , 10; Aff. Griffith ¶ 7; Aff. Bennett ¶¶ 7, 9, 10; Aff. Leonard ¶¶ 7, 9."

In evaluating the numerosity requirement, the actual number of the class is not the sole factor to consider. "Although there is no specific number of class members necessary to evidence the impracticability of joinder, the Court should consider the geographic dispersion of the class

5

members, judicial economy and the ease of identifying the members of the class and their addresses." *Leszczynski*, 176 F.R.D. 659, 669 (S.D. Fla. 1997); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000) (Joinder of 200 class members is impractical, where class members live in several different areas). Class action is especially favored in this cause of action where the corporate Defendants are located in Key West, the individual Defendants are located in Key West, and the documents relevant to this cause of action are located in Key West, Florida.

Further, there is the potential for reluctance among class members that continue to reside in Key West to sue individually for fear of being black-listed. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1014 (W.D. Mich. 1987). Key West being a small insular population, class members may fear retribution that by filing an individual cause of action will prevent them from being hired by other businesses on the island. Permitting a class action would promote a degree of anonymity to class members by not being identified as named Plaintiffs, while preserving their rights to pursue this unpaid wage claim.

**2. Common Questions of Law and Fact, Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Rule is disjunctive, thus a showing of a common question of *either* fact *or* law satisfies Rule 23(a)(2). *Georgia State Conference of Branches of NAACP v. State of Ga.*, 99 F.R.D. 16, 25 (S.D. Ga. 1983). "[O]ne significant common question of law or fact will satisfy this requirement. *Id.* Commonality "focuses on whether a <u>sufficient nexus</u> exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "A court will normally find commonality where a question of law refers to <u>standardized conduct</u> by defendants

towards members of the proposed class." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991).  However, it is not necessary that all members of the class have identical claims, as there is "no requirement here that issues subject to generalized proof predominate over those subject to individualized proofs." *Murray*, 244 F.3d 807, 811; see also *Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000).

### a. Common Question of Law and Fact with Respect to Deductions of Uniforms and $3.00 per shift

The DOL investigated Defendants and found that *"tipped employees were not paid the minimum wage as a result of being deducted from wages the purchase of required uniforms and a required three dollar shift fee which is deducted from cash wages."* "Exhibit 3 - Bates Stamp No. DOL 012."

Defendants' Handbook states: "The cost of the initial uniform will be taken out of your 1st paycheck." "Exhibit 4." Defendants conceded that the uniform deductions were unlawful. "Exhibit 5 pp. 58, 59." "Exhibit 6 pp. 43-46."

In addition, all Defendants, which used the same handbooks, illegally deducted $3.00 per shift from the wage owed to the tipped employees.  In *Bennett,* Defendants conceded that the $3.00-per-shift deduction was made from the wages owed to tipped employees. Defendant, DEMENT testified: "we had a $3.00 tip out on the check, yes." "Exhibit 5 p. 33." Defendant, WALSH conceded that the $3.00 deduction came "from my bank account." "That money came from my payroll account to pay an employee (and not from employee tips)" "Exhibit 5 p. 32."

When the $3.00 per shift deduction was made, Plaintiffs were paid less than the required minimum wage, a violation common as to all Plaintiffs as well as members of the putative class.

It is unlawful to make deductions which bring employee pay below minimum wage. *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002); *De Leon-*

7

*Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1308 (N.D. Ga. 2008). Uniform deductions that bring payment below the minimum wage are prohibited. *Marshall v. Root's Rest., Inc.*, 667 F.2d 559, 561 (6th Cir. 1982); *Hodgson v. Newport Motel, Inc.*, 87 Lab. Cas. P 33830 (S.D. Fla. 1979).

### b. Common Question of Law or Fact with Regards to Defendants' Taking Control of Employees' tips

In order to claim a tip credit, tipped employees must be allowed to retain all their tips. 29 U.S.C. §203(m); *Goldin v. Boce Group, L.C.*, 773 F. Supp. 2d 1376, n. 1 (S.D. Fla. 2011); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009); *Pellon v. Bus. Representation Intern., Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007) *aff'd,* 291 Fed. Appx. 310 (11th Cir. 2008).

The tip credit is invalidated when the restaurant owners participate in the tip pool. *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Every court that has considered the issue has unequivocally held that the FLSA expressly prohibits employers from participating in employee tip pools.")

Bartenders and servers were required to turn over a portion of their tips ("tip-out") to the restaurant managers. The Defendants' handbooks states that managers have sole discretion to allocate tips. "Exhibits 7 through 10." The statements and deposition testimonies of managers George McClean, Shandell Medd and Tony Jones, establish than when the managers received tips, there was tip money that was not redistributed to any tipped employee and misappropriated by the restaurant owners. Manager Jones stated:

> After distributing tips, there was money left over. The leftover tips went into a "flush fund." The flush fund was used for miscellaneous expenses. One example, if a drawer was short; the leftover tips were used to cover such shortage. "Exhibit 11 ¶ 4."

Manager McClean also testified there was surplus tip money that was retained by the Defendants:

> Q: When you collected whatever the percentage was from the servers and the bartenders at Mangoes, and you paid the -- the individuals that we just discussed, was there ever --
> A: Okay.
> Q -- any money left over?
> A: Yes. And it was put in an envelope and never touched by me. Just put in an envelope and sent down to the office, collected with --
> Q: So the record is clear, the money that was leftover was tip money that the servers and the bartenders had given to you; correct?
> A: Yes.
> Q: And how do you know that money was sent to the office?
> A: Because it is -- that's procedure. Any extra tips are usually put with the bank and sent out to the office. "Exhibit 12 pp. 23, 24."

Dara Vidal, an office employee and server from 2008-2011, saw owner DEMENT or another appointed person carrying the excess tip money "withheld" from the tipped employees "brought from the restaurants, [i.e.], the flush fund." "Exhibit 13 ¶10."

Andrea Trdina, a server at Fogarty's and Jack Flats, observed the managers count the tip money received from servers and bartenders. She observed that not all of the tip money was distributed to tipped employees. The money that was not distributed was picked up by owner DEMENT or another appointed person.

The managers testified to sending e-mails to the central office. The e-mails show there was surplus tip money not being distributed to employees. Manager Shandell Medd testified:

> Q: So the only tips that you distributed were the tips that you received every night, the 3 percent?
> A: For that -- for that shift, yes.
> Q: **And the e-mails that you sent out included the amount that was left over**?
> A: **Specifically, yes**. "Exhibit 14 p. 33."
> * * *
> Q: And you can certainly tell me, as you have told me before, that the money that was left over in the white box was never redistributed by you to other tipped employees?

9

A:      No, it was not. "Exhibit 14 p. 58:1."

Manager George McClean testified that he sent e-mails to Defendants stating how much surplus tip money was left:

Q:      In the e-mails, did you report how much money you had distributed in tips?
A:      Yes. Listed by host or hostess, food runner, busser, and expeditor. And then at the bottom, anything that's left over. **It's always listed in my e-mail, always**. "Exhibit 12 p. 98:2.

In *Bennett*, there have been two Court Orders compelling production of all relevant e-mails. "Exhibit 15." "Exhibit 16." Defendants have yet to comply with the two Court Orders.

The misappropriation of tip money was common to all employees at all of the restaurants which operated under the same policies.

### b. Common Question of Law or Fact with Regard to Defendants' Taking Control of Employees' Tips

The tip credit is invalidated when employers fail to inform tipped employees that they intend to take a tip credit in accordance with Section 203(m). The informational requirement is a condition precedent to tip credit availability. *Id*; *Goldin; Sambodromo, Pellon*, supra. The required information is outlined in the DOL's interpretative bulletin:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has **informed its tipped employees in advance** of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: **The amount of the cash wage that is to be paid** to the tipped employee by the employer; **the additional amount by which the wages of the tipped employee are increased** on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee . . . and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. 29 C.F.R. § 531.59(b) [emphasis added].

The official comment to § 531.59(b), specify that strict compliance is required:

> The Department has concluded that notice of the specific provisions of 3(m) is required to adequately inform the employee of the requirements of the tip credit. To the extent that the Sixth Circuit and other courts have reached different results,

10

the Department notes that those courts generally failed to consider the important legislative developments underlying the FLSA's tip credit provisions and we choose to not be guided by those decisions in this revision of the regulations. *Updating Regulations Issued Under the Fair Labor Standards Act,* 76 FR 18832-01.

The 2008 handbook **does not inform employees at all** of Defendants intention to take a tip credit. The 2008 Handbook does not inform employees of the amount of the cash wage to be paid to employees. The 2008 handbook also requires employees' to pay the restaurant $3.00 for every shift they worked. The $3.00 is paid from employees' wages (not tips), thus, further reducing employees cash wage.[4] The $3.00 deduction varies according to how many shifts the employee works in a particular week. Thus, the hourly wage paid to the employee is always a moving target. This practice results in a violation of 29 C.F.R. § 531.59(b), in that Defendants fail to inform as to *"The amount of the cash wage that is to be paid to the tipped employee by the employer."* 29 C.F.R. § 531.59(b).

The 2008 handbook does not inform employees **at all of the amount of the tip credit** ($3.02 per hour). 29 C.F.R. § 531.59(b). Moreover, because of the $3.00 per shift deduction, the amount of the tip credit taken varies each week according to how many shifts the employee works. Thus, the employees are not informed as to the *"the additional amount by which the wages of the tipped employee are increased."* 29 C.F.R. § 531.59(b).

The handbook does not inform employees that all tips will be retained by the employee. Rather, the handbook states that bartenders and servers must turn tips equal to 3% of their total

---

[4] The $3.00 is deducted from the Plaintiff's wages and not from tips. Defendants refer to the deduction as a "tip out." However, the use of the word "tip" is a misnomer and the cause for confusion. For example, Gerald Griffith during the pay period ending November 28, 2010 was deducted $33.00 from his wages. "Exhibit 17." The total wages assessed by the restaurant was $231.67, subtracting taxes in the amount of $36.22, $41.58, and $9.72, equals $144.15. However, Plaintiff instead was paid $111.15, because there is a further deduction to Plaintiff's wages in the amount of $33.00, or 11 shifts at $3.00. Thus, Griffith was paid at a rate of $2.01 per hour.

11

sales to the managers, to be distributed at the manager's sole discretion. "Exhibits 7 through 10." Some of that tip money was kept by the owners or treated as part of their gross receipts, thus invalidating the tip credit. 29 U.S.C. § 203(m).

**All Other Handbooks Fail to Properly Inform and are Deficient in Additional Ways**

The aforementioned deficiencies in the 2008 handbook are contained in the other handbooks. In addition, the 2009 handbook states that servers and bartenders will be paid $4.19 per hour. However, on July 24, 2009, the required subminimum wage owed to tipped employees was $4.23 per hour. All Plaintiffs and putative Plaintiffs were misinformed as to the subminimum wage required by law, in violation of 29 C.F.R. § 531.59(b).

The handbooks further misinform because it states that Defendants and servers are required to make a $3.00 per shift contribution to the restaurant. Such $3.00 contribution came from the wage that the restaurants had to pay the tipped employees.

The 2010 and 2011 handbooks are similar to the 2009 handbook. They evidence the same violations and also fail to inform that Defendants intend to claim the tip credit allowed by § 203(m). The required minimum wage for tipped employees was $4.23, yet the handbook informs that tipped employees will be paid $4.19 per hour.

Plaintiffs Affidavits evidence that they were never informed by Defendants that: (1) they intended to claim a tip credit as to them; (2) the amount of the required cash wage (Plaintiffs were paid less than the required cash wage from July 25, 2009 through 2011); (3) the amount of the tip credit taken("the additional amount by which the wages of the tipped employee are increased"); and (4) "that all tips received by the tipped employee must be retained by the employee." 29 C.F.R. 531.59(b).

**All Restaurants are Commonly Owned and Operated**

The individual Defendants have admitted in the Answer (in *Bennett*) that at all times material hereto, they had operational control over the three corporate Defendants. "Exhibit 18." The work of all Plaintiffs was directed and controlled by the two individual Defendants. The restaurants all have one office location, at 227 Duval Street. They all have the same Human Resources' representative and the same bookkeeper. "Exhibit 5 pp. 11-18." "Exhibit 19 p. 8." The restaurants **used the same handbook**. "Exhibits 7 through 10." Hayes Robertson Group, Inc. is composed of three restaurants that do business as "Fogarty's," "Mangoes" and "Caroline's."

The restaurants suffered from the same unlawful practices during the same periods in time. DEMENT was in charge of payroll practices at the restaurants. The restaurants had a policy to not inform employees of the tip credit, in direct violation of 29 U.S.C. § 203(m).

### 3.  Plaintiffs' Claims are Typical of the Putative Class

Rule 23(a)(3) requires "the claims or defenses of the parties are typical of the claims or defenses of the class." The claims of the representative parties need to be sufficiently similar to the factual positions of the other class members so that they will adequately represent them. *Powers v. Stuart-James Co.*, 707 F.Supp. 499, 503 (M.D. Fla. 1989). The typicality requirement requires a class representative to "possess the same interest and suffer the same injury as the class members," albeit there may be substantial factual differences. *Murray*, 244 F.3d 807, 811. The distinction between commonality and typicality is "commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza*, 273 F.3d 1341, 1346.

In the present case, the claims alleged by the named Plaintiffs are "sufficiently similar, **if not identical** to the claims alleged by the class. *Powers,* supra*.* Plaintiffs, like the putative class, allege a minimum wage violation by (1) $3.00 per shift deduction bringing their pay below the minimum wage; (2) deduction for cost of uniforms; (2) they were not informed as required by § 203(m); and (4) their tips were retained by the restaurants and treated as part of their gross receipts. Since the class-based claims in this case arise from the same facts and same breach of the legal requirements for minimum wage compliance, the typicality requirements of Rule 23(a)(3) are satisfied.

### 4. Plaintiffs Adequately Protect the Class' Interests

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class. The *adequacy* requirement encompasses two steps:

> (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

A conflict exists where the representatives' interest are antagonistic to the class, such that party members that claimed to be harmed by the conduct are in conflict with class members that claim to be benefited by the conduct. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). In the present action, the named Plaintiffs and class members share the same claim and interest. Both the named Plaintiffs and class members claim violations of minimum wages which reduced their wages. Upon a favorable decision, both the Plaintiffs and class members will benefit from restitution of unpaid wages from the Defendants. The named Plaintiffs will not benefit from any acts that are harmful to the class members, nor vice-versa.

As to the second prong, the representative Plaintiffs must "provide competent counsel and vigorously prosecute the action on behalf of the class." *Moreno-Espinosa v. J & J Ag*

*Products, Inc.*, 247 F.R.D. 686, 690 (S.D. Fla. 2007). Further, where a class is represented by competent and zealous counsel, class certification should not be denied when there is a perceived subjective interest among the named Plaintiffs. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987). Plaintiffs' counsel is experienced in Florida Minimum Wage claims and litigating hundreds of minimum wage and overtime claims before the Southern District, including, multiple tip credit cases.  Plaintiffs' counsel has succeeded in establishing tip credit violations all the way through completion of jury trials (one bench trial), representing multiple Plaintiffs. See *Cruz v. Consolidated Sandwich Corp., d/b/a Latin American Restaurant; Ortiz v. Santuli Corp.; Corbo v. Zuperpollo; and Medrano v. Mi Colombia Bakery, Inc.* "Exhibit 20."

Plaintiffs counsel has also been lead counsel in hundreds of FLSA cases in the Southern District of Florida as well as in Florida State Court.

### 5. The Requirements of Rule 23(b)(3) are Met

Once the requirements of Rule 23(a) are met, the Court must separately find the requirements of Rule 23(b) are met.  This is action is brought pursuant to Florida and Federal minimum wage law.  Federal Rule 23(b)(3) states a class action may be maintained if:

> The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.
>
> The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

A common question of law or fact predominates when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) *citing Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1558 (11th Cir.1989); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (Predominance requires an "overarching common issue" that breaks down into an unmanageable variety of individual claims). The Eleventh Circuit has held:

> Common issues of fact and law predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 699 (N.D.Ga.2001). <u>Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points</u> to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). (emphasis added).

The class claims will predominate over the individual claims to such an extent that the individual claims will become subsumed within the class claims. The overarching class proof will override the individual proof. The class seeks minimum wage compensation based on a <u>company-wide practice</u> of paying below the proper reduced cash wage to all tipped-employees. Once a company-wide practice is established, no legal or factual questions remain. The only individualized proof required will be class members' individual determination of damages, readily determinable through a spreadsheet. Class members may be reluctant to file separate causes of action for the reasons discussed, *supra*, geographic dispersion and fear of retribution.

There is desirability to filing all causes of action in a singular forum. The relevant documents are present in Key West, the Defendants are present in Key West, supervisors and co-workers not part of the class continue to reside in Key West, and many of the Plaintiffs and class members reside in Key West, Florida.

With respect to the last factor, no significant administrative difficulties are expected in managing the class. The principal concern is calculating the amount of damages owed to each class member. However, such damages are readily determinable from a review of Defendants' records which indicate the number of hours each member worked, the amount paid in wages and tips and the amount of deductions taken from their wages. The damages would amount to a straightforward spreadsheet calculation for each member.

Therefore, a unified determination as to whether the Defendants' wage policies are in conformity with the tip-credit requirements of the Florida Minimum Wage Laws would predominate over the class and would serve to be the superior method to adjudicate this case.

### **Declaration of Class Action as to Minimum Wage Claims Pursuant to FLSA, 29 U.S.C. § 216(B)**

### **The Proposed Class**

Plaintiffs seek class certification with respect to Count II of the Complaint. The Plaintiffs ask that the Court certify a class consisting of:

> All hourly paid tipped servers and bartenders employed by Defendants from January 2008 through May 11, 2011, who were paid at the reduced subminimum tip credit hourly rate and who (1) Participated in a tip pool; (2) Defendants deducted $3.00 per shift from their wage and for whom; and (3) Defendants deducted the cost of uniforms from the wage owed to them.[5]

### **Argument**

The Court has discretion to permit notice of this action to all potential plaintiffs. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The 1947 amendment to the FLSA added the opt-in procedure, providing that "no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in

---

[5] The same class definition as sought under Rule 23. *supra.*

17

which such action is brought." *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1248 (11th Cir. 2003) *citing* 29 U.S.C. § 216(b).

The congressional intent in authorizing opt-in procedures under 29 U.S.C. § 216(b) was to avoid multiple lawsuits against the same employer. *Prickett*, 349 F.3d 1294, 1297 (11th Cir. 2003). The requirement for consent in writing also sought "to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit." *Id.,* at 1248 *citing Arrington* v. *Nat'l Broad. Co.*, 531 F. Supp. 498, 502 (D.D.C. 1982). The congressional intent would not be furthered if Plaintiffs, who do not file written consents in time for the complaint, would be required to file a new lawsuit, creating the inefficient result of multiple suits against the employer. *Prickett*, 349 F.3d 1294, 1297 (11th Cir. 2003); *Yates v. Wal-Mart Stores, Inc*., 58 F.Supp.2d 1217 (D. Col. 1999) ("As each Plaintiff could, therefore, file his or her own suit, judicial efficiency demands that, if possible, these individual suits be consolidated. The opposite conclusion could lead to a party having to defend itself in not two, but potentially hundreds of identical lawsuits…").

The Eleventh Circuit uses a two-tiered approach for 29 U.S.C. § 216(b) class certification. *Hipp*, 252 F.3d 1208, 1218. First, the notice stage, were a court determination is made based on a lenient standard that typically results in "conditional" certification of the class. *Id*. The requirements for similarly-situated under § 216(b) are "less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). The lenient standard is in recognition of the minimal evidence available to the Court to make a full determination. *Hipp*, 252 F.3d 1208, 1218. If the court is satisfied, the minimal standards are met, and the Court should grant Plaintiffs' Motion to "Conditionally Certify" the Class. Thereafter, a more rigorous determination is, typically,

precipitated by a Defendant's Motion to Decertify. *Id*. The second determination relies upon a more replete view of the case based on the discovery to determine whether the potential opt-in Plaintiffs are similarly-situated, and whether decertification is appropriate. *Id*.

Plaintiffs bear the burden during the "notice stage" of demonstrating a reasonable basis that the aggrieved individuals exist within the proposed class. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1312 (M.D. Ala. 2002). Plaintiffs must demonstrate other employees' desire to join the action. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004). The Plaintiffs' mere stated belief in the existence of other employees who desire to opt-in is insufficient. *Id.* This determination is ordinarily based mostly on the parties' pleadings and affidavits. *Cameron-Grant*, 347 F.3d at 1243 n. 2; *Chase v. Aimco Props., L.P.*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005).

Plaintiffs' affidavits indicate they are aware of other employees that are similarly-situated to the Plaintiffs. "Exhibit 21." Plaintiffs need only show "that their positions are similar, not identical, to the positions held by the putative class members." *Grayson*, 79 F.3d 1086, 1096 (emphasis added). The "similarly-situated" standard is a "flexible" standard and not a "particularly stringent" standard. Additionally, where a standard pattern of violative compensation practices may satisfy the "similarly-situated" requirement. *Whineglass v. Smith*, 2012 WL 6163067 (M.D. Fla. Nov. 14, 2012) *report and recommendation adopted,* 2012 WL 6139006 (M.D. Fla. Dec. 11, 2012).

Numerous courts have held that the existence of one other co-worker who wishes to join the lawsuit is sufficient grounds to grant class certification. *Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512 (S.D. Fla. May 17, 2006). Plaintiffs' affidavits in conjunction

with the frequent appearance of Plaintiffs to this action indicate there are others similarly-situated that desire to join this case. "Exhibit 2."

The same causes of action for minimum wage claims pursuant to Florida law under Rule 23 raised are the same raised for minimum wage claims pursuant to the FLSA. Succinctly stated, Plaintiffs and members of the putative class claim: 1) violations of a tip pool due Defendants improperly taking control of tips; 2) failure to pay minimum wages by paying a wage below required by law; and 3) failure to pay minimum wages by deducting the costs of uniforms. The violations are further set forth in the Rule 23 section. *Supra.*

WHEREFORE, Plaintiffs respectfully request the Court enter an Order permitting: 1) opt-out class certification for minimum wage claims for those individuals identified in the class under Rule 23, or in the alternative, under 29 U.S.C. § 216(b); 2) the last-known home address, telephone number, e-mail address for persons identified in either the minimum wage or overtime class to be provided in an excel spreadsheet; 3) permitting Plaintiffs to mail the court-approved Notice to all persons within the class advising them of their rights to join this suit "Exhibit 22"; and 4) toll the statute of limitations from the date of this motion, together with any and all other relief which the Court deems just and equitable.

Dated on this 23rd day of January, 2013.

                THE LAW OFFICES OF
                EDDY O. MARBAN
                1600 Ponce de Leon Boulevard, Suite 902
                Coral Gables, Florida  33134
                Telephone (305) 448-9292
                Facsimile (305) 448-9477
                E-mail: marbanlaw@gmail.com

                By: *s/Edilberto O. Marban*
                     EDDY O. MARBAN, ESQ.
                     Fl. Bar No. 435960